Richards v. Hatfield.

L. D. Richards et al., appellees, v. John D. Hat-
field, appellant.

Filed June 5, 1894.    No. 5660.

1. **Injunction:** Laches: Equity.   There is no rule of law which
requires an action by injunction for equitable relief to be brought
within any given time.   Whether the bringing of an action in
equity has been unreasonably delayed, and whether the com-
plainants therein have been guilty of laches in not bringing it
sooner, are questions to be determined from the facts and cir-
cumstances in the case.

2. **Laches:** Estoppel: Equity.   The defense of estoppel by laches
or unreasonable delay in the bringing of a suit in equity is of
itself an equitable defense, and cannot be successfully main-
tained when it appears that the delay complained of as unrea-
sonable was caused, or contributed to, by the party interposing
the defense.

3. **Taxes:** Proof of Payment.   The payment of a tax, like any
other fact, may be proved by the best evidence attainable.

4. **A statutory tax receipt** is only *prima facie* evidence that the
taxes for which the receipt calls have in fact been paid.

5. **Taxes:** Evidence of Payment.   The legislature never in-
tended by the enactment of section 103 of the revenue act, 1879,
to make a tax receipt when issued or the entry of the payment
of taxes, when made in the tax books mentioned in said section,
conclusive evidence.

6. ———: ———.   The absence from the tax books of an entry, as
required by said section 103, of payment of taxes assessed
against property therein described raises a presumption that
such taxes have not in fact been paid; but such presumption is
by no means a conclusive one.

7. ———: Payment.   A collector of taxes has no authority to re-
ceive in payment thereof anything but lawful money of the
United States, and may refuse to accept a bank check or draft in
·payment of such taxes; but if a collector accepts such check or
draft in payment of taxes, and afterwards receives the money
thereon, such receipt operates as a payment of the tax, although
the collector fails to make an entry of the payment of such
taxes in his tax books, never issues to the party paying the tax
a statutory receipt therefor, and embezzles the money received.

8. ———: ———: PROOF. The owner of certain lands brought a suit to enjoin a county treasurer from selling the same for taxes which he alleged to be delinquent thereon, the owner claiming in his petition that such taxes had, in fact, been paid. It appeared from the evidence that in March, 1880, the owner made and delivered to the then county treasurer his check on an Omaha bank in payment of such taxes; that said check was drawn payable to the order of the then county treasurer; that in the month of April, following, said check was, in the usual course of business, duly presented to the bank on which it was drawn and by it paid and charged to the account of the landowner. *Held*, That in the absence of all other evidence on the subject, the fair, reasonable, and logical inference was that the county treasurer, to whom said check was drawn payable and delivered, received the money thereon.

APPEAL from the district court of Antelope county. Heard below before ALLEN, J.

*O. A. Williams, County Attorney,* for appellant:

The action cannot be maintained on account of laches. (*North v. Platte County,* 29 Neb., 447; *Montgomery v. Noyes,* 11 S. W. Rep. [Tex.], 138; *Terry v. Fontaine,* 2 S. E. Rep. [Va.], 743; *McCartin v. Traphagan,* 11 Atl. Rep. [N. J.], 165; *Barnett v. Barnett,* 2 S. E. Rep. [Va.], 733; *Chamberlain v. Town of Lyndeborough,* 14 Atl. Rep. [N. H.], 865; Code of Civil Procedure, sec. 14; *Alexander v. Overton,* 22 Neb., 229.)

Taxes must be paid in money as provided by law. Collectors cannot receive check in payment. (Cooley, Taxation [2d ed.], 452; 2 Desty, Taxation, 694; *Elliott v. Miller,* 8 Mich., 132; *Cedar County v. Jenal,* 14 Neb., 254.)

The legislature intended to do away with the common law proof of payment with reference to taxes, and to provide proof by receipt, or by the entry of payment in the tax books, and no other mode of proof is allowable. (Consolidated Statutes, secs. 3193, 4002, 4006.)

*N. D. Jackson, contra:*

The appellees were not guilty of laches. (*Boman v. Wathen,* 1 How. [U. S.], 189; *Jones v. Lloyd,* 117 Ill., 597; *Bausman v. Kelley,* 38 Minn., 197; *Napton v. Leaton,* 71 Mo., 358; *Platt v. Platt,* 58 N. Y., 646; *Sedlak v. Sedlak,* 14 Ore., 540; *Lurzelere v. Starkweather,* 38 Mich., 96; *Learned v. Foster,* 117 Mass., 365.)

When the taxpayer attends at the office of the proper officer and pays to such officer the amount of his taxes and specifies the purpose for which the money is paid, he has performed the only duty the public requires of him in that regard; and the fact of such payment may be established the same as the payment of any other debt or obligation. (*Rambert v. Cohem,* 4 Esp. [Eng.], 213; *Jacob v. Lindsay,* 1 East. [Eng.], 460; *Keene v. Meade,* 3 Pet. [U. S.], 7; *Dennett v. Crocker,* 8 Me., 239; *Kingsbury v. Moses,* 45 N. H., 222; *Berry v. Berry,* 17 N. J. Law, 440; *Leatherbury v. Bennett,* 4 Har. & McH. [Md.], 392; *Ford v. Smith,* 5 Cal., 314; *Hinchman v. Whetstone,* 23 Ill., 185; *Adams v. Beal,* 19 Ia., 61.)

RAGAN, C.

L. D. Richards brought this suit in the district court of Antelope county against John D. Hatfield, the treasurer thereof, to enjoin him from selling certain lands described in the pleadings, for taxes levied thereon for the years 1872 to 1879, both inclusive, on the ground that such taxes were fully paid by the grantor of Richards and others early in the year 1880. The district court found that the taxes had been paid as alleged by Richards and others, and entered a decree perpetually enjoining the treasurer of Antelope county and his successors in office from selling the lands for the said taxes. The case is before us on appeal. The facts as disclosed by the record may be summarized as follows:

60

On the 1st of March, 1880, one John I. Redick was the owner of the lands described in the pleadings in this case, and about that time he entered into a contract with Richards and others to sell to them these lands and other lands in said county. By the terms of his contract Redick was to convey these lands to Richards and others free and clear of all incumbrances whatever and by deeds of general warranty. For the purpose of carrying out his contract with Richards and others, Redick, about the 1st of March, 1880, went to Oakdale, the then county seat of Antelope county, and procured the county clerk of said county to make abstracts of all the lands he had contracted to sell Richards and others. At the same time Redick requested and obtained from the county treasurer a statement of all the taxes then due and unpaid upon the lands he had contracted to sell Richards and others for the years 1872 to 1879, both inclusive. These taxes amounted at that date to $1,221, and Redick, to pay said taxes to said treasurer, drew his check on the Omaha National Bank for said some of money, payable to the order of said treasurer. King, the county treasurer, accepted this check, and shortly afterwards it was presented to the bank on which it was drawn, paid, and charged to Redick's account. At the time that Redick paid the taxes by the check aforesaid to the treasurer he did not procure from the treasurer the statutory tax receipts, for the reason that they were then not made out, and as it would require some time to make them out, the treasurer executed and delivered to Redick a receipt for the $1,221, reciting that it was in full payment of all the taxes due upon the lands which Redick had contracted to sell Richards and others, and the treasurer promised Redick at the time that he would in a few days make up the formal statutory receipts and send them to him. At the same time the treasurer certified, on the abstracts of title which Redick had procured the county clerk to make of the lands, that all the taxes assessed against said lands

for the years 1872 to 1879, both inclusive, had been fully paid.    The reason that Redick did not obtain from the county treasurer at the time he paid the taxes the statutory receipts for such taxes appears to be that it would require the treasurer several days to make them out and Redick was anxious to return to his home.    It is not shown by the record whether such statutory receipts were ever made out by the treasurer, but if they were they never came into the possession of Redick or the appellees.    The treasurer's tax books of Antelope county contain no entries showing that any of the taxes on these lands for the years 1872 to 1879, both inclusive, or any of those years, have ever been paid.    Redick took the abstracts of title made of the lands for him by the county clerk and certified by the county treasurer as above stated and the receipt for the taxes paid by him to the treasurer on the lands and turned them all over to the appellees in this case.    The record does not show that the appellees ever knew, until about the time of the bringing of this suit, but that the treasurer's tax books of Antelope county showed that the taxes on these lands had been paid for the years above stated; nor does the record contain any evidence that the authorities of Antelope county at any time made any threats or efforts to collect any of the taxes on these lands for said years until about the time of the bringing of this suit.    The receipt given by King, the county treasurer, and turned over to him by the appellees, was not produced on the trial, but its absence was accounted for.    There is no conflict in the evidence in the case, and the only issue is whether or not the taxes on the lands for the years 1872 to 1879, both inclusive, and for which taxes the treasurer was threatening to sell the lands, had been paid by Redick, the grantor of the appellees.    To reverse this decree the appellant makes the following contentions:

1. That the appellees did not bring their suit within a reasonable time, as ten years had elapsed between the date

of the payment of the taxes by Redick and the commence-
ment of their action.   In other words, the argument is
that the appellees have been guilty of laches, have shown
no reasonable excuse for the great delay in bringing the
suit, and that their claim is a stale one.   There is no rule
of law which requires an action for equitable relief to be
brought within any given time.   Whether the bringing of
such an action in equity has been unreasonably delayed,
and whether the complainants therein have been guilty of
laches in not bringing it sooner, are questions to be deter-
mined from the facts and circumstances in the case.   In
the case at bar the appellees received from their grantor in
1880, along with their conveyances for these lands, ab-
stracts of title therefor.   These abstracts contained the cer-
tificate of the then county treasurer of Antelope county
that all the taxes in controversy had been paid, and the
appellees also had in their possession a receipt given by the
treasurer to the grantor of appellees for the money paid by
said grantor to said treasurer for the taxes.   We do not
think that under these circumstances the appellees were re-
quired to doubt that the taxes were paid; nor that they
were required to go to the treasurer's office of Antelope
county and examine his tax books to ascertain if he had
entered on said tax books the payment of these taxes; and
if the appellees were bound to know that the tax books in
the treasurer's office did not contain entries showing the
payment of these taxes, still the appellees were under no
obligation to bring any suit to enjoin the collection of the
taxes before some effort or threat was made to collect them
by the authorities of Antelope county, or certainly not be-
fore the authorities in said county set up some affirmative
claim that such taxes had not in fact been paid.   For aught
that this record shows the threat of the present treasurer
to sell the lands for the taxes of those years is the first
claim ever asserted by any of the authorities of Antelope
county that the taxes on the land had not been paid by

Redick. The law requires the county treasurers of the several counties in this state, in the month of November, of each year, to advertise and sell all lands on which taxes have been assessed and which remain unpaid for previous years. The treasurer of this county could then have advertised this land for sale for the taxes of these years at any time since the year 1880. If the taxes were, as a matter of fact, unpaid on the lands, it was his duty to do so, and had he done so, the present suit would probably have long since been decided and the appellant would not have felt called upon to interpose the defense of laches in bringing the suit on the part of appellees. The defense of estoppel by laches or unreasonable delay in bringing an equitable suit is of itself an equitable defense, and cannot be successfully maintained when it appears that the delay complained of as unreasonable has been caused by, or contributed to by, the party interposing the defense. But it is argued by the appellant that it would be inequitable to permit the appellees to maintain this suit, for the reason that the county now has no recourse upon the bond of the county treasurer, King, by reason of the running of the statute of limitations. The answer to this argument is that if the authorities of Antelope county had discharged their duties to the people of that county, they would have discovered, long before the statute of limitations became a bar, that the county treasurer, King, had collected these taxes and embezzled the money; but the county cannot use the dereliction of duty on the part of its officers as a weapon with which to destroy the legal barrier that prevents it from compelling a citizen to pay taxes upon property already paid. Nothing in the record in this case discloses any reason why the appellees should be estopped from maintaining this action.

2. The second contention of the appellant is that the only competent evidence of the payment of the taxes in this case was either the county treasurer's statutory re-

ceipts for such taxes or entries made by the county treasurer in his tax books of their payment; and as the undisputed evidence in the record is that no entries were ever made in the tax books of the payment of these taxes, and no statutory receipt for the taxes were, so far as the evidence shows, ever made by the treasurer or delivered to Redick, that therefore the district court had before it no competent evidence on which to base its finding that Redick paid the taxes; or, to state the matter briefly, the contention of the appellant is that no evidence is competent to prove the payment of the taxes except the statutory receipt or the entry made by the tax collector in the tax books. This argument is based on appellant's construction of section 103 of chapter 77 of the revenue law (Comp. Stats., 1893), which is as follows: "Whenever any person shall pay the taxes charged on any property, the collector shall enter such payment in his book and give a receipt therefor, specifying for whom paid, the amount paid, what year paid for, and the property and value thereof on which the same was paid, according to its description in the collector's book, in whole or in part of such description as the case may be; and such entry and receipt shall bear the genuine signature of the collector or his deputy receiving such payment; and whenever it shall appear that any receipt for the payment of taxes shall be lost or destroyed, the entry so made may be read in evidence in lieu thereof," etc. We do not agree to this contention. The payment of a tax, like any other fact, may be proved by the best evidence attainable. The statutory tax receipt is *prima facie* evidence, and only *prima facie* evidence, that the taxes for which the receipt calls have in fact been paid; and the same may be said of the entry of the payment of a tax made by a tax collector in his tax books, as provided by said section 103. The legislature never intended by this section to make a tax receipt when issued, nor the entry of the payment of the taxes when made in the tax books

the only evidence that the taxes had in fact been paid; nor did the legislature intend to make such receipt or such entry conclusive evidence that such taxes had been paid. The absence from the tax books of an entry of payment of taxes assessed against property therein described raises a presumption indeed that such taxes have not in fact been paid; but such presumption is by no means a conclusive one. (*Adams v. Beale*, 19 Ia., 61; *Hinchman v. Whetstone,* 23 Ill., 185; *Berry v. Berry,* 17 N. J. Law, 440; *Wolf v. Foster,* 13 Kan., 19; *Stout v. Hyatt,* 13 Kan., 232.) In the case at bar it was not possible to produce in evidence a statutory tax receipt for the taxes paid by Redick, nor entry of payment of such taxes made by the county treas-urer in his tax books, for the reason that no such receipts or entries existed; but the payment of these taxes by Redick to the treasurer, King, was proved by two living, competent witnesses who were present at the time, and it seems to us that it would be a perversion of law as well as common sense to say that the evidence of these witnesses was incompetent to prove the fact of the payment of these taxes.

3. A third contention of appellant is that taxes can only be paid in money; that a collector of taxes has no author-ity to receive in payment thereof anything but money, and that, as the evidence in this case shows that Redick paid the taxes to the treasurer by giving him a check on a bank therefor, therefore the evidence does not support the find-ing of the court that Redick in fact paid the taxes to the treasurer. We agree entirely with the contention of coun-sel, that no tax collector has any authority to receive in payment and discharge thereof anything but lawful money of the United States, and that if he does accept any kind of property other than lawful money in payment of taxes, such acceptance by him of such property will not operate to discharge or pay such taxes. It is doubtless true that a collector of taxes may refuse to accept a check or draft in

payment thereof and may insist upon being paid in actual money, and until such payment is made the taxes will not be discharged; but in this case King, the county treasurer, accepted in payment of the taxes a check of Redick drawn upon an Omaha bank. If this check had been protested or never had been paid, of course it would not have operated as a payment of the taxes; but the treasurer obtained the money on this check from the bank on which it was drawn, and the moment he did so he held such money as treasurer of the county in his official capacity, and the taxes to pay which it was given were from that moment paid and discharged.

4. A final contention of counsel for the appellant is that the district court had before it no competent evidence from which it could find that King, the county treasurer, actually received the money on the check given him by Redick for the taxes in controversy. The evidence shows that Redick drew his check to the order of King, the county treasurer, on the Omaha National Bank for $1,221, in payment of the taxes. This was some time in March, 1880; that early in April, 1880, a check for this amount of money, drawn on said bank, payable to the order of said treasurer and drawn by said Redick, was presented to said bank and paid and the amount thereof charged to the account of Redick. We think that the fair, reasonable, and logical inference from this testimony was the one made by the district court, that King, the county treasurer, actually received the money called for by said check. Appellant's counsel complain because the check was not produced on the trial. Very few business men can produce a check given by them in payment of a debt ten years ago. Very few business men retain possession of ordinary bank checks for ten years after their payment. The failure to produce this check in evidence on the trial of this case was a circumstance which perhaps the trial court might have considered in arriving at the conclusion as to whether or not

the taxes in controversy had been paid; but we do not regard such failure as very material. Counsel for the appellant is to be commended for the zeal which he has displayed in defending this suit, but we are constrained to say, after a careful examination of the record, that we think the law and the equities of the case are with the appellees, and that the findings and decree of the district court are correct. The decree is

AFFIRMED.